IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CHARLES JOHNSON, JR.**                                                  **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO.:2:13-cv-114-KS-MTP**

**CAROLYN W. COLVIN**
**Acting Commissioner of Social Security Administration**            **DEFENDANT**

### REPORT AND RECOMMENDATION

Plaintiff Charles Johnson, Jr. ("Johnson") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Acting Commissioner of Social Security Administration denying his claim for supplemental security income. The matter is now before the Court on the Complaint [1], Plaintiff's Memorandum Brief [10], Defendant's Motion for an Order Affirming the Decision of the Commissioner [11] and Plaintiff's Motion for an Order Qwarding Disability Benefits [14]. Having considered the pleadings, the record and the applicable law, and being fully advised in the premises, the undersigned recommends that the Acting Commissioner's decision be AFFIRMED and that Plaintiff's Motion [14] be denied.

### PROCEDURAL HISTORY

On April 11, 2011, Plaintiff applied for supplemental security income ("SSI") under the Social Security Act, alleging disability as of June 4, 2008, due to alleged nerve damage from a stab wound to his left hip. (Administrative Record [9] at pp. 37-38, 97-102 and 120-125).[1] Plaintiff's claims were denied initially and upon reconsideration ([9] at pp. 64, 67, 74 and 76).

---

[1] For ease of reference, the administrative record is cited to herein by reference to the Court's docket number and docket page number in the federal court record (not the Administrative Record page number).

Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ([9] at pp. 9-13).

On April 13, 2012, a hearing was convened before ALJ Charles C. Pearce, in which the Claimant elected to proceed *pro se*. ([9] at pp. 28-29 and 96). The ALJ heard testimony from Plaintiff; Plaintiff's father, Charles Johnson; and Charles Miller, a vocational expert ("VE"). ([9] at pp. 26-46). Afterward, the ALJ obtained medical records from Plaintiff's treating nurse practitioner, Elisa Hillman, dated September 7, 2011. He notified the Plaintiff of his receipt of the records and allowed him ten days within which to request a supplemental hearing and/or to submit additional written comments and/or records. ([9] at pp. 25, 45 and 176-177). On June 8, 2012, after having received nothing further from the Plaintiff, the ALJ issued a decision finding that Plaintiff was not disabled. ([9] at pp. 14-22).

On July 7, 2012, Plaintiff requested a review of the ALJ's decision, and submitted additional information for the Appeals Council to review.[2] ([9] at pp. 8-13). The Appeals Council considered the additional evidence and made it part of the record. However, on May 15, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the [Acting] Commissioner. ([9] at pp. 4-8).

Aggrieved by the Acting Commissioner's decision to deny benefits, Plaintiff filed a Complaint in this Court on May 29, 2013, seek a remand of the decision of the Acting Commissioner and ALJ. (Complaint [1] at p. 2). The Acting Commissioner answered the Complaint, denying that Plaintiff is entitled to any relief. (Answer [8] at pp. 3-4). The parties

---

[2]Plaintiff submitted a list of current medications (meloxicam, cyclobenzaprine and methylprednisolone), information about his next appointments with Elisa Hillman and a letter from Mr. Johnson stating the reasons he disagreed with the ALJ. ([9] at pp. 7-8).

having briefed the issues in this matter pursuant to the Court's Scheduling Order [3], the matter is now ripe for decision.

## MEDICAL/FACTUAL HISTORY

Plaintiff was thirty-seven years old at the time of the hearing before the ALJ on April 13, 2012. ([9] at p. 32). His alleged disability onset date was June 4, 2008. ([9] at pp. 38 and 97). Plaintiff has an eighth grade education and attended special education classes. ([9] at pp. 32 and 122). He has past work experience as a cook at a bagel restaurant and as a machine operator/assembler and automotive parts sorter. In addition, he has past work experience in lawn service, and in maintenance at a religious community center. ([9] at pp. 33-36, 131-138 and 148). He has not worked since 2001 or 2002.[3] Plaintiff alleges that he is disabled due to nerve damage from having been stabbed in his left hip. ([9] at pp. 37-38).

Plaintiff asserts that his former girlfriend stabbed him twice in his left hip in June 2008. Although he claims to have gone to the hospital for treatment, there are no medical records in the Court record to support his allegation. He claims that the medical staff at the hospital took x-rays but did not find anything wrong with him. ([9] at pp. 37-38). He got no medical treatment at the time because it was not "really hurting that bad[ly] at the time." ([9] at p. 38).

He claims that the pain intensified by the early 2009. ([9] at p. 38). When Johnson entered the Michigan Department of Corrections, he was subjected to a medical evaluation, which was performed by an RN, Annette Miller, on March 12, 2009. That day, Johnson reported

---

[3]Plaintiff was incarcerated in the Michigan Department of Corrections in 2004 or 2005 and served approximately eighteen months. He was released in 2006 but went back into prison in Michigan in 2009 whereupon he served two years. Both times he was convicted of possession of cocaine with intent to deliver. ([9] at pp. 36-37).

no subjective complaints.  He advised nurse Miller that he had no injuries or pain that required medication.  However, he reported daily Motrin usage, without explanation of the reason he allegedly needed Motrin.  ([9] at pp. 230-232).

On August 5, 2009, he went to the prison medical staff requesting a refill of Motrin, and explained that he had been stabbed in his left hip prior to entering prison.  Notes indicated he had been previously kiting[4] for Motrin, but wanted the medication to come to him regularly.  He complained that the pain was so bad on cold or misty days that he could not walk to the dining hall.  Objectively, the nurse practitioner documented scars on the hip and in the area of his complaint.  He had good range of motion in his extremities, a "strong" gait, and good reflexes in his knees and ankles.  ([9] at p. 226).  He was assessed with "pain related to past trauma."  The nurse practitioner changed Motrin to a different NSAID (nonsteroidal antiinflammatory drug), salsalate[5] 500mg, three times daily as needed for pain.  ([9] at p. 228).  She explained that his medication was to be taken as needed, which prevented her from writing a standard prescription with refills.  He was advised to continue using the kite system when in pain.  ([9] at p. 227).

On September 10, 2009, prison officials were called to the yard for "man down."  ([9] at p. 221).  Johnson was found sitting on a bench complaining of left leg pain; requested a cane for ambulation assistance.  At the medical unit, the RN conducted a muscle strain/sprain protocol.  Johnson referred to the prior stabbing incident, stating he had been in pain since then.  He described a "throbbing" pain as of September 10, 2009, more than a year after the stabbing.  ([9]

---

[4]Kiting is a prison term used to describe a written message system, such as passing a note to a warden.  http://www.prisontalk.com (last visited July 3, 2014).

[5]Salsalate is an NSAID, which converts to salicylic acid in the body and works much like aspirin.  http://www.medicinenet.com/salsalate (last visited July 3, 2014).

at p. 221).  The RN's objective examination of Johnson's left leg revealed normal sensory response, distal pulse and distal temperature with limited movement. The nurse assessed him with "alteration in comfort secondary to leg pain" and "impaired physical mobility." ([8] at p. 221).  With the exception of his taking non-prescription pain relievers, Mr. Johnson was given no additional interventions aside from "education." ([9] at p. 221-222).  In other words, he was not prescribed or directed to use a cane, according to the nurse's report. ([9] at pp. 221-222).

At his annual health screening on October 5, 2009, no assistive devices were noted; and the RN recorded, "No Disabilities" and "No Accommodations" under the section titled "Disabilities and Limitations."  ([9] at pp. 219-220).  On October 12, 2009, Johnson underwent another nurse protocol for muscle strain/sprain when he complained that the throbbing pain from his hip injury had progressed into his left foot.  He requested a cane.  Objective findings were all normal, including movement; the nurse found nothing abnormal in his examination.  Johnson was given acetaminophen, 325mg twice daily for three days. ([9] at p. 224).  During a follow-up for a diagnosis of hypothyroidism on October 10, 2009, Plaintiff reported that he was walking one or two laps every day.  On November 21, 2009, the RN performed an evaluation and determined that Johnson walked without a limp, shifted his weight occasionally to compensate and that he had a steady gait. ([9] at p. 215).

Medical records from the Michigan Department of Corrections, Health Care Services, make no reference to any problems related to his hip after 2009. ([9] at pp. 186 -213).  There are notations in late April and early May of 2010 indicating that Mr. Johnson was taking Tylenol three times a day as needed for pain.  ([9] at pp. 195-201).

After Plaintiff applied for SSI, the Disability Determination Services contracted with Dr.

Theodore E. Okechuku to perform a medical evaluation of Mr. Johnson, which took place on May 24, 2011. Subjectively, the Plaintiff complained of left leg weakness for three years' duration with numbness. He claimed to have severe pain in his left knee that radiated into his left hip, and which was a nine out of ten in pain intensity that woke him from sleep occasionally; but Aleve relieved the pain. He said he could: walk on level ground for only about five minutes continually; stand for about twenty minutes; sit for about ten minutes; and lift about twenty pounds of weight. He had no difficulty getting onto or off the examination table and was able to dress and undress himself. He was observed walking with a limp; he used a cane for stability. ([9] at pp. 233-237).

Objectively, his motor examination was 5/5 in all muscle groups except the left knee flexors which were 4/5 in strength. His deep tendon reflexes were 2+ throughout. Dr. Okechuku noted a reduced sensation to his left lateral thigh. Plaintiff exhibited a full range of motion in both hip joints. He had flexion in his right knee of 100 degrees, flexion of 150 degrees in his left knee. His straight leg test was negative,[6] and he was able to lay straight on the examination table. He had no difficulty walking on his heels, squatting, doing heel-to-toe exercises or standing on his toes. Examination revealed no tenderness in the spinal and paraspinal areas. His cervical spine motion was noted as normal; his lumbar spine flexion was ninety degrees, and extension was thirty degrees.[7] ([9] at p. 235).

---

[6]Straight leg test is performed to determine the reason for low back and leg pain; it stretches the sciatic nerve. http://www.sanfordhealth.org (last visited July 3, 2014).

[7]Mr. Johnson's lumbar spine motion was normal. *Se*e http://www.ssas.com/disability-medical-tests (Social Security Advisory Service references: normal lumbar spine flexion 80-90 degrees, normal lumbar spine extension 30 degrees) (last visited July 3, 2014).

Dr. Okechuku's impression was "left leg weakness – possible sciatic nerve damage." He opined a moderate impairment with regard to standing, bending, stooping, squatting, reaching, pushing and pulling. He concluded his report by stating, "This patient needs a full neurological evaluation and nerve conduction studies." ([9] at p. 235).

In conjunction with Plaintiff's application for SSI, Medical Consultant, Dr. Robert Culpepper, completed a Physical Residual Functional Capacity Assessment on July 6, 2011. Dr. Culpepper had the benefit of Dr. Okechuku's evaluation and found that Plaintiff could: occasionally lift fifty pounds; frequently lift twenty-five pounds; and stand and/or walk, and sit, six hours out of an eight-hour day. He found that Plaintiff was limited in his lower extremities regarding pushing and pulling. Because of decreased sensation, he limited Plaintiff's ability to climb, stoop, kneel, crouch and crawl to occasion instances, and opined that Plaintiff should never be required to balance posturally. He further opined that Plaintiff "should not be in conditions that rely actively on machinery operated by foot; same for heights based on [left lower extremity] weakness" and advised that Plaintiff should avoid moderate exposure to machinery and height hazards. Finally, Dr. Culpepper opined that Plaintiff's stated severity of symptoms was not credible based upon Dr. Okechuku's findings, which did not indicate the necessity of cane for ambulation. ([9] at pp. 238-245).

On September 7, 2011, Mr. Johnson went to the Family Health Center in Laurel,[8] where he met with Nurse Practitioner Elisa Hillman. (*Compare* [9] at p. 25 to p. 246-247). Plaintiff

---

[8]Family Health Center, Inc. is a federally qualified, Joint Commission Accredited, community health center. It is a Health Center Program grantee under 42 U.S.C. 254(b) and is deemed a Public Health Service employee under 42 U.S.C. 233(g)-(h). http://www.lfhc.net (last visited July 7, 2014).

told her he was "trying to apply for disability and need[ed] a [follow up] on his worsening ability to walk." ([9] at p. 246). Nurse Hillman recorded Plaintiff's subjective history as reported to his previous providers, except for a claim that he had walked with a cane and limp for three years. He also described lumbosacral spine pain radiating to his left leg, describing the pain as "aching." ([9] at p. 247). He said the pain was exacerbated by walking and sitting, but that lying down relieved the pain.

Objective examination showed tenderness in the lumbar spine and left buttock to palpation, with a lumbar spine muscle spasm. Further, on straight leg raising, Plaintiff's left leg was limited to thirty degrees; his right leg was raised to ninety degrees. Nurse Hillman assessed chronic back pain. She prescribed Medrol, Flexeril and Mobic.[9] Because he claimed inability to pay for x-rays or an MRI, the nurse practitioner agreed to try to set an appointment with an orthopaedist at University Medical Center. Mr. Johnson was scheduled to follow up at Family Health Center two weeks later. ([9] at p. 247). No further medical records have been made a part of the Court record.

## BURDEN OF PROOF

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and

---

[9]Medrol is a type of steroid. http://rxlist.com/medrol-drug.htm (last visited July 3, 2014). Flexeril is a muscle relaxant. http://www.drugs.com/flexeril.html (last visited July 3, 2014). Mobic is an NSAID used to treat pain and inflammation. http://www.drugs.com/mobic.html (last visited July 3, 2014).

therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
>
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

862 F.2d 471, 475 (5th Cir. 1988). The claimant bears the burden at the first four steps, but the burden thereafter shifts to the Commissioner at step five. Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir.2005). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell,* 862 F.2d at 475 (citations omitted).

### ADMINISTRATIVE LAW JUDGE'S ANALYSIS

On June 8, 2012, after considering the testimony given at the April 13, 2012, hearing along with the medical and other records submitted, the ALJ rendered his decision that Plaintiff was not disabled. ([9] at pp. 14-22). At step one of the evaluation process,[10] the ALJ found that

---

[10] The ALJ applied the evaluation process set forth in 20 C.F.R. § 416.971.

9

Plaintiff had not engaged in any substantial gainful activity since April 11, 2011, the date of his application for SSI. ([9] at p. 19).

At step two, the ALJ found that Plaintiff had a medically determinable, non-severe impairment, "residuals from a stab injury to left leg." ([9] at p. 19). He found the impairment had not significantly limited, nor would it be expected to significantly limit, Plaintiff's ability to "perform basic work-related activities for 12 consecutive months."[11] ([9] at p. 19). According to the ALJ, in making this finding, he not only contemplated basic work activities exemplified in SSR-85-28, but also considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence and also considered opinion evidence.[12] ([9] at pp. 19-20). The ALJ found that the [C]laimant's allegations of disability were less than credible because "no objective evidence support[ed] his claim." ([9] at p. 21). At best, the objective evidence showed a non-severe impairment, which had no more than a minimal effect on the Claimant's ability to work, irrespective of his age, education and work history.[13] ([9] at p. 21).

Having concluded that the Plaintiff did not have a severe impairment, the ALJ did not proceed to steps three, four or five. Accordingly, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act. ([9] at p. 22).

---

[11] 20 C.F.R. § 416.921.

[12] C.F.R. §§ 416.929 and 416.927; and SSRs 96-4p, 96-7p, 96-2p, 96-5p, 96-6p; and 06-3p.

[13] See Stone v. Heckler, 752, F.2d 1099 (5th Cir. 1985).

**STANDARD OF REVIEW**

This Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted). However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' so long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

**ANALYSIS**

Plaintiff brings this action, arguing that the ALJ erred in making his determinations and the Acting Commissioner erred in accepting those determinations. Plaintiff's arguments for

11

reversing the Acting Commissioner's final decision are discussed below.

***Issue No. 1:   Whether the ALJ afforded Mr. Johnson a full and fair adjudication of his claim***

Plaintiff argues that the ALJ erred by failing to provide a full and fair hearing for a number of reasons.  He first suggests that the ALJ did not develop a complete medical history in "using" the contradictory report of Dr. Okechuku.  He asserts that the ALJ should have inquired into the "contradiction matter." ([10] at p. 2).  The undersigned finds this argument without merit.

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir.1984).   Where evidence in the record is sufficient to establish whether or not the claimant is disabled, an ALJ bears no duty to recontact a medical source.  *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 953, 184 L. Ed. 2d 728 (U.S. 2013).

There is ample evidence in the record which allowed the ALJ  to make his decision.   As the ALJ pointed out, nothing in the record supports that the Plaintiff sought or obtained medical treatment at the time of the alleged stabbing in June 2008.  The Plaintiff only sought medical attention a few times during 2009 while he was incarcerated.  There were no objective findings to substantiate any medical diagnosis, and he was treated with over the counter medications for his subjective complaints of pain and discomfort.  Plaintiff had no documented complaints in 2010 and went to the Family Health Center only once in 2011, then seeking assistance for his disability claim.  The nurse practitioner assessed the Plaintiff with chronic back pain, treated him medically and suggested a follow up to obtain radiography, which did not occur, according to the available medical records. The undersigned finds that the ALJ had no duty to further question Dr.

Okechuku regarding the inconsistencies between the objective evidence and his opinions. There was sufficient evidence to establish that Plaintiff had a non-severe impairment and was therefore not disabled.

Plaintiff next suggests the ALJ did not fully and fairly develop the record because he disregarded Plaintiff's testimony concerning Plaintiff's not returning to the doctor's office because he could not afford to pay an outstanding invoice. ([10] at p. 3). The ALJ's opinion is silent regarding Plaintiff's reason for failure to obtain medical care or treatment after September 7, 2011, when he saw nurse Hillman; but the silence is inconsequential. "'Procedural perfection in administrative proceedings is not required' so long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)). Plaintiff has failed to demonstrate how his substantial rights were affected.

Third, Mr. Johnson argues that the ALJ did not develop the record fully and fairly because he declined to include in his decision certain details -- objective findings and subjective comments -- noted by Nurse Hillman on September 7, 2011. ([10] at p. 3). The ALJ considered the referenced medical record ([9] at p. 21); and the Plaintiff has failed to demonstrate how the ALJ's failure to include more information about a nurses's notes in his written opinion has affected his substantial rights or could have affected the outcome.[14]

Plaintiff next suggests that the ALJ did not fully and fairly develop the record because he did not question Johnson about the stabbing incident. The ALJ found inconsistencies in the

---

[14]Although he does not mention the nurse by name, the nurses's records are referenced in the ALJ's opinion by exhibit number 4F. (*See* [9] at 21, 243-244).

medical records indicating on the one hand that Plaintiff was stabbed before he went to prison, and on the other hand, that he was stabbed while he was in prison. According to Plaintiff, this inconsistency allegedly led the ALJ to determine that many of Plaintiff's statements contradicted his testimony. ([10] at p. 3). The ALJ did find that the "[C]laimaint's allegations of disability [were] less than credible." ([9] at p. 21). However, he based this decision foremost on the lack of objective evidence in the record as a whole to support Plaintiff's claim. ([9] at p. 21).

Great deference is given to an ALJ's credibility determination and will be upheld if it is based on the record as a whole. *Vanlandingham v. Astrue*, 3:09CV5-WAP-DAS, 2010 WL 2105927 (N.D. Miss. Apr. 6, 2010) *report and recommendation adopted*, 3:09CV5-WAP-DAS, 2010 WL 2105920 (N.D. Miss. May 24, 2010) (citing *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir.2000)). The ALJ's credibility finding was not only based upon the record in its entirety, but was also supported by substantial evidence. Moreover, clarification of the alleged inconsistency about when the stabbing took place would not have changed the outcome or affected Plaintiff's substantial rights.

Finally, Plaintiff sets forth a similar argument regarding prescription medications. He points out that the ALJ erred in stating that Plaintiff did not submit prescription medications.[15] According to Plaintiff, if the ALJ had considered the meloxicam and cyclobenzaprine, he would

---

[15]Plaintiff's separate argument that the ALJ erred by not considering his prescriptions for cyclobenzaprine and meloxicam, as well as his skin disorder, are also without merit. (See [10] at pp. 3-4). The referenced medications were not mentioned by their generic names until Plaintiff submitted a medication list to the Appeals Council. Even so, the ALJ had considered the records from Nurse Hillman, who prescribed Flexeril, which is a brand of the generic cyclobenzaprine, and Mobic, a brand of the generic drug meloxicam. *See* http://www.rxlist.com/flexeril-drug.htm (last visited July 7, 2014); http://www.medicinenet.com (last visited July 7, 2014). Plaintiff never claimed that any skin disorder was a source of his alleged disability. ([9] at p. 37 (disabled because of pain form having been stabbed).

have understood that taking the medications made a difference in Plaintiff's answers to the questions concerning his ability to sit and stand. ([10] at p. 4). Plaintiff was first questioned about such abilities by Dr. Okechuku on May 24, 2011, before taking Flexeril and Mobic, then by the ALJ on April 13, 2012, after taking these medications. The ALJ noted that the Plaintiff's answers to the same or similar questions about his abilities changed from May 24, 2011 to April 13, 2012. ([9] at p. 21). As stated above, the primary reason the ALJ discredited his Plaintiff's testimony was not that he had inconsistent statements, but that his disability claims were not supported by objective evidence ([9] at p. 21), a finding supported by substantial evidence as explained, *supra*. As such, Plaintiff's substantial rights were not affected by the ALJ's omission in analyzing the effect of taking the referenced medications.

Considering the foregoing, the undersigned finds that the ALJ fully and fairly developed the record. His decision was informed and based upon sufficient facts. The ALJ considered all the evidence submitted and obtained additional records after the hearing, records referenced in his opinion. The medical evidence, especially the lack of objective evidence, supports his overall decision that the Plaintiff sustained a non-severe impairment, at best.

*Issue No. 2:  Whether the ALJ applied the correct legal standard*

Plaintiff argues that his case should be remanded because the ALJ applied the wrong legal standard. He suggests that the ALJ's opinion itself is contradictory because he found that the Plaintiff had a non-severe impairment based upon objective evidence but also found that the [C]laimant demonstrated normal findings. He questions how "normal" findings support an "impairment" based on objective evidence. ([10] at p. 2).

An analysis of the ALJ's opinion does not support Plaintiff's conclusion. The ALJ

referenced Dr. Okechuku's report and concluded that the "[C]laimant demonstrated *mostly* normal findings in all areas of his hips, back, knees and legs." ([9] at pp. 21-22 (emphasis added)). Further, the ALJ referenced Nurse Hillman's finding of tenderness and only thirty degrees on left leg straight testing. ([9] at p. 21). Thus, the ALJ did not render an opinion that the "[C]laimant demonstrated [n]ormal findings." (*See* [10] at p. 2).

What the ALJ did find was a "non-severe impairment, at best" ([9] at p. 21), and applied the standard from *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[A]n impairment can be considered not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of his age, education or work experience." *Id*. at 1101 (citing *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) (current definition). The ALJ virtually quoted this language from *Ston*e in his opinion. ([9] at p. 21).

Plaintiff argues that the ALJ erred in applying *Stone.* ([10] at p. 2). His argument is misplaced. The ALJ is required to apply the *Stone* standard. The *Stone* court analyzed the history of the statutory definitions, the ruling and standard set forth in *Estran*, *supr*a, as well as opinions from other districts. The court concluded that an ALJ and Appeals Council will have applied the wrong standard "unless the correct standard is set forth by reference to *this opinion* or another of the same effect...." Id. at 1106 (emphasis added). The undersigned finds that the ALJ applied the correct standard in citing *Stone*, thereby precluding remand.

*Issue No. 3:   Whether any of Plaintiff's other points support reversal*

The undersigned recognizes that Plaintiff filed his brief, proceeding *pro se*, with an eighth grade education, having taken special education classes. The undersigned further notes that the

Plaintiff raised numerous other issues, some of which are obscure at best. In an effort to try to ensure that his points have been addressed, the undersigned will now briefly address miscellaneous points raised, as follows:

A. Plaintiff alleges that the ALJ should have discredited the opinion of Dr. Okechuku because his report indicates a stab wound to the groin, as opposed to the hip. ([10] at pp. 2-3). The undersigned notes that ALJ did not give Dr. Okechuku's opinion much weight because his opinion contracted his objective findings. ([9] at p. 22). Thus, Plaintiff's point is without merit.

B. Plaintiff argues that the ALJ should have given more weight to Dr. Okechuku's "objective finding" that Plaintiff sustained "possible sciatic nerve damage." According to the Plaintiff, such a finding would have rendered him disabled. ([10] at p. 3). This point fails for two reasons. First, as stated above, Dr. Okechuku's opinion was given little weight. The administrative fact finder is entitled to determine the credibility of medical experts and to weigh their opinions and testimony accordingly. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The undersigned finds that substantial evidence supports the ALJ's decision to discount Dr. Okechuku's opinion.

Further, the Plaintiff's point is misplaced. Dr. Okechuku did not objectively find "possible" nerve damage. He merely recommended further testing due to the "possibility" of nerve damage. ([9] at p. 235). No evidence is in the Court record establishing a diagnosis of sciatic nerve damage.

C. Plaintiff repeatedly asserts that the ALJ rendered a contradictory opinion based upon insufficient evidence. After thorough review and analysis of the ALJ's opinion, the undersigned finds no support for this argument. Moreover, as explained above, there was sufficient evidence

to support his decision that the Plaintiff sustained a non-severe impairment, at best, and was therefore not disabled.

      D.  Plaintiff also argues that the ALJ committed reversible error in not giving controlling weight to his treating physician's opinion.  ([10] at p. 3).  He does not elaborate, but the undersigned infers he is referring to Elisa Hillman, the nurse practitioner.  The undersigned finds this argument without merit.  As an initial matter, she did not render an opinion.  In addition, she is not a medical doctor.  As the ALJ observed, "[T]here are no treating doctor opinions to receive controlling weight."  ([9] at p. 22).  Moreover, there is nothing in the ALJ's opinion to suggest that the ALJ in any way discounted her examination findings.  Although he did not mention her by name, he referenced her examination by exhibit number 4F, and factored the examination findings into the evidence he considered.  ([9] at p. 21).

      E.  Mr. Johnson also accuses the ALJ and the Commissioner of acting in conspiracy against him, which therefore deprived him of a full and fair hearing. ([10] at p. 4).  The undersigned finds no evidence to support this theory.  In addition, this Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence.  *Hollis*, 837 F.2d at 1382.  As set forth herein, the undersigned is satisfied that both prongs of the standard have been met.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and utilizes correct legal standards.  It is, therefore, the recommendation of the undersigned that Defendant's Motion for an Order Affirming the

Decision of the Commissioner [11] be granted, that Plaintiff's Motion for an Order Awarding Disability Benefits [14] be denied and that the Complaint [1] be dismissed.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the Judge, the Magistrate Judge and the opposing party.  The District Judge at the time may accept, reject, or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 17h day of July, 2014.

s/ Michael T. Parker
United States Magistrate Judge